IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRCT OF OHIO
EASTERN DIVISION

| CAROLYN BLACKMON, | ) | CASE NO. 4:20-CV-01196-JDG |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | **MEMORANDUM OF OPINION AND ORDER** |
| Defendant. | ) | |

Plaintiff, Carolyn Blackmon ("Plaintiff" or "Blackmon"), challenges the final decision of Defendant, Andrew Saul,[1] Commissioner of Social Security ("Commissioner"), denying her applications for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1381 *et seq.* ("Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and the consent of the parties, pursuant to 28 U.S.C. § 636(c)(2). For the reasons set forth below, the Commissioner's final decision is VACATED AND REMANDED FOR FURTHER CONSIDERATION CONSISTENT WITH THIS OPINION.

## I.    PROCEDURAL HISTORY

In August 2017, Blackmon filed applications for POD, DIB, and SSI, alleging a disability onset date of December 31, 2016 and claiming she was disabled due to generalized anxiety disorder, unknown bilateral foot problem, osteoarthritis of the back and knees, and major depressive disorder. (Transcript ("Tr.") at 10, 62, 69.) The applications were denied initially and upon reconsideration, and Blackmon requested a hearing before an administrative law judge ("ALJ"). (*Id.* at 10.)

---
[1] On June 17, 2019, Andrew Saul became the Commissioner of Social Security.

1

On June 7, 2019, an ALJ held a hearing, during which Blackmon, represented by counsel, and an impartial vocational expert ("VE") testified. (*Id.*) On July 1, 2019, the ALJ issued a written decision finding Plaintiff was not disabled. (*Id.* at 10-20.) The ALJ's decision became final on April 14, 2020, when the Appeals Council declined further review. (*Id.* at 1-6.)

On June 1, 2020, Blackmon filed her Complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this case. (Doc. Nos. 15, 17-18.) Blackmon asserts the following assignment of error:

(1) The ALJ's mental RFC finding is contrary to law and not supported by substantial evidence.

(Doc. No. 15.)

## II. EVIDENCE

**A.   Personal and Vocational Evidence**

Blackmon was born in May 1964 (Tr. 61, 68) and was 55 years-old at the time of her administrative hearing, making her a "person of advanced age" under Social Security regulations. *See* 20 C.F.R. §§ 404.1563(e), 416.963(e). She has at least a high school education and is able to communicate in English. (*Id.* at 88, 102; *see id.* at 32-58.) She has past relevant work as a production assembler, mail sorter, home health aide, dietary aide, and telemarketer. (*Id.* at 19.)

**B.     Relevant Medical Evidence[2]**

The medical record contains no evidence that Blackmon received counseling services for her mental impairments.

On February 19, 2018, Blackmon saw Kenneth Gruenfeld, Psy.D., for a consultative evaluation. (Tr. 417.)  Blackmon told Dr. Gruenfeld she struggled with depression and had "consistently missed work and failed to carry out job tasks when she did work." (*Id.* at 418.)  Blackmon reported problems with sadness and feeling worthless because of her family and medical history, as well as problems sleeping and racing thoughts. (*Id.* at 419.)  Blackmon complained of forgetfulness, lack of focus and motivation, and being easily distracted. (*Id.*)  She told Dr. Gruenfeld she often did not want to perform her daily activities and when she is depressed, she just sleeps. (*Id.*)  Blackmon reported isolating from others and experiencing anhedonia. (*Id.*)  Blackmon denied receiving psychotherapy or taking psychotropic medication. (*Id.*)

Dr. Gruenfeld found Blackmon well-groomed and alert with poor eye contact. (*Id.*)  Blackmon demonstrated normal speech, appeared sad during portions of the evaluation, and cried at times, although she did not appear nervous. (*Id.*)  Blackmon exhibited good concentration, recalled three of three simple objects after fifteen minutes, recalled five digits forward and backward, and completed serial 7 subtraction down to 2. (*Id.* at 420.)  Blackmon showed no issues with insight and judgment. (*Id.*)

Dr. Gruenfeld opined that while task comprehension would not be an issue for Blackmon, "[s]he endorsed issues of focus and motivation which would impact her ability to consistently carry out future job tasks." (*Id.* at 420-21.)  Given Blackmon's history, impairments, and lack of mental health treatment,

---

[2] The Court's recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the parties' Briefs. Because Blackmon challenges only the ALJ's mental RFC, the discussion of the medical evidence is limited to her mental impairments. The Court notes Plaintiff's counsel failed to comply with the Court's Initial Order (Doc. No. 5) with respect to the "Facts" section of the brief and did not set forth a recitation of the relevant medical evidence in that portion of the brief. Therefore, the Court further limits its discussion of the evidence to the medical evidence set forth in Defendant's brief.

Dr. Gruenfeld further opined Blackmon would work slower than others during a depressive episode and would struggle with multi-step jobs and multi-tasking. (*Id.* at 421.) Dr. Gruenfeld further opined stress would worsen Blackmon's depression, and while Blackmon appeared "capable of managing, at least, a low stress job setting, the quality and consistency of future job performance will worsen as stress worsens." (*Id.* at 421.) Dr. Gruenfeld diagnosed Blackmon with unspecified depressive disorder. (*Id.*)

**C.     State Agency Reports**

On December 11, 2017, Vicki Warren, Ph.D., determined there was insufficient evidence in the file to fully assess Blackmon's psychological conditions. (*Id.* at 65, 72.)

On March 5, 2018, David Dietz, Ph.D., opined Blackmon had mild limitations in her abilities to understand, remember, or apply information and interact with others, and moderate limitations in her ability to concentrate, persist, or maintain pace and adapt or manage herself. (*Id.* at 82, 96.) Dr. Dietz further opined Blackmon would have increasing difficulties with concentration and attention as tasks became more complex. (*Id.* at 87, 101.) Dr. Dietz further opined Blackmon would "need extra support with planning, scheduling and with changes." (*Id.*)

**D.     Hearing Testimony**

During the June 7, 2019 hearing, Blackmon testified to the following:

- She lives alone in an apartment. (*Id.* at 36, 47-48.) She holds a current driver's license. (*Id.* at 36.)

- Her most significant issues are her mind frame and her back. (*Id.* at 45.) She has a lot of depression. (*Id.*) She has been through a lot in life and she keeps it bottled up inside. (*Id.*)

- She had seen a counselor or psychiatrist or psychologist "when [she] first signed up," but that was it. (*Id.* at 45.) She could not recall when that was. (*Id.* at 46.) She took medication for her depression and anxiety. (*Id.* at 50.)

- She has a "little bit" of a problem with her memory "sometimes." (*Id.* at 46.) She may have to ask again for instructions, but she can follow directions "every now and then." (*Id.*) She also "sometimes" has problems making decisions and will need to ask somebody for help or advice. (*Id.*)

- On a typical day, she wakes up, attends to her hygiene, maybe has a cup of coffee, and watches a little TV. (*Id.* at 47.) She lives in a high rise and tries to go downstairs to interact with some of the residents there. (*Id.*) She may visit her mother or sister. (*Id.*) Then she goes back home. (*Id.*) She used to like to go to bingo, but she does not get out much anymore. (*Id.*) She likes to read. (*Id.*) She does her own laundry because the laundry room is two doors down on her floor. (*Id.*) She cooks chicken or some potatoes or vegetables. (*Id.*) She cooks twice a day. (*Id.*)

- She has a hard time maintaining attention and concentration. (*Id.* at 49.) Being around people increases her anxiety and she tries to keep to herself. (*Id.* at 50.) She goes to the store and comes right back into her apartment. (*Id.*) She does not even go around her family much. (*Id.*)

The VE testified Blackmon had past work as a production assembler, home health aide, dietary aide, mail sorter, and telemarketer. (*Id.* at 51-52.) The ALJ then posed the following hypothetical question:

> Please assume a hypothetical of the claimant's age and education, with the past jobs described. Further assume that the individual is limited to the full range of light, with the following additional limitations. Climbing ramps and stairs is limited to frequent. Climbing ladders, ropes, or scaffolding is limited to occasional. Stooping, kneeling, crouching, and crawling are all limited to frequent. The following additional mental limitations, understanding, remembering and carrying out instructions is limited to performing simple, routine tasks. Dealing with changes in the work setting is limited to simple work-related decisions. Can the hypothetical individual perform any of the past jobs you described?

(*Id.* at 52.)

The VE testified the hypothetical individual would be able to perform Blackmon's past work as a mail sorter, production assembler, home health aide as performed but not according to the DOT, and dietary aide as performed but not according to the DOT. (*Id.* at 52-53.) The VE further testified the hypothetical individual would also be able to perform other representative jobs in the economy, such as housekeeping-cleaner, sales attendant, and office helper. (*Id.* at 53.)

The ALJ modified the hypothetical to limit the hypothetical individual to sedentary work. (*Id.*) The VE testified the hypothetical individual could not perform Blackmon's past work but could perform

other representative jobs in the economy such as account clerk, food and beverage order clerk, and document preparer. (*Id.* at 53-54.)

### III. STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a).

A claimant is entitled to a POD only if: (1) she had a disability; (2) she was insured when she became disabled; and (3) she filed while she was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100, 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c), 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or

6

combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if the claimant's impairment or combination of impairments does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g).

Here, Blackmon was insured on her alleged disability onset date, December 31, 2016, and remained insured through March 31, 2023, her date last insured ("DLI"). (Tr. 10-11.) Therefore, in order to be entitled to POD and DIB, Blackmon must establish a continuous twelve-month period of disability commencing between these dates. Any discontinuity in the twelve-month period precludes an entitlement to benefits. *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

## IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2023.

2. The claimant has not engaged in substantial gainful activity since December 31, 2016, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: spine dysfunction, osteoarthritis, and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with occasionally lifting and carrying up to

7

> 20 pounds and frequently lifting and carrying 10 pounds; sitting for 6 hours in an 8-hour workday; standing/walking for 6 hours in an 8-hour workday; pushing and pulling as much as she can lift and carry; occasionally climbing ladders, ropes, and scaffolds; frequently climbing of ramps and stairs; frequently stooping, kneeling, crouching, and crawling; limited to the performance of simple, routine tasks; and limited to simple work-related decisions.

6. The claimant is capable of performing past relevant work as a mail sorter and a production assembler. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2016, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 13-19.)

## V. STANDARD OF REVIEW

The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The findings of the Commissioner are not subject

to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir.2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached."). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-1300, 2012 WL 5383120, at *6 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, No. 1:10-cv-734, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

## VI. ANALYSIS

Blackmon argues the ALJ erred in that the RFC did not include "Dr. Gruenfeld's assessment that Plaintiff lacks consistency in her ability to carry out job tasks, would work slower than others and have difficulty handling workplace stressors and pressures," nor did it include "Dr. Dietz' assessment of needing extra support to manage planning, scheduling and changes," and "critically, the ALJ did not explain why these limitations expressly stated in their opinions were excluded from the RFC." (Doc. No. 15 at 6.) Blackmon acknowledges that while the ALJ may accept some portions of a medical opinion while rejecting others, that was not what happened in this case. (*Id.* at 7 n.4.) Blackmon asserts that, "With the exception of finding Dr. Gruenfeld's opinion 'was somewhat vague and not fully stated in vocational terms,'. . .all the rationales given by the ALJ are *in support of the limitations described by the Agency's experts*, and yet, no mention is made, *one way or the other*, of these additional mental limitations in the ALJ's RFC." (*Id.* at 6-7) (internal citation omitted) (emphasis in original).

The Commissioner responds that the ALJ noted the record lacked any mental health treatment and "appropriately considered the medical opinion and prior administrative medical findings." (Doc. No. 17 at 4.) The Commissioner argues Blackmon's argument should be rejected for several reasons, including: (1) the ALJ found Dr. Gruenfeld's opinions "were generally, but not wholly, consistent with the evidence," and as a result, the ALJ adopted some, but not all, of Dr. Gruenfeld's limitations; (2) the ALJ explained why he did not adopt Dr. Gruenfeld's limitations regarding Blackmon's ability to consistently carry out job tasks and handle workplace stressors; (3) the ALJ noted Dr. Gruenfeld's opinions were vague; and (4) the ALJ "discussed *every* piece of objective evidence, as set forth above, regarding Plaintiff's mental impairments and noted that Dr. Dietz's findings were not entirely consistent with the evidence showing Plaintiff's robust daily activities, lack of mental health counseling or medications, and no hospitalizations. Tr. 16-18 (citing Tr. 36-37, 46-47, 417-21)." (*Id.* at 6-7.)

In her reply, Blackmon asserts that the Commissioner's "allusion" to the ALJ noting Dr. Gruenfeld's opinions were vague as a reason for the Court to affirm the ALJ's finding of no disability "plainly asks it to supply a new meaning to this term other than the one already contained in the ALJ's explanation, which can be fairly rewritten as: 'Although vague, I find Dr. Gruenfeld's opinion consistent with the record, and explicitly reject no part of the opinion.'" (Doc. No. 18 at 3.) Blackmon further argues that her case is even stronger with respect to the ALJ's treatment of Dr. Dietz' opinions. (*Id.*) Blackmon maintains the Commissioner's arguments are nothing more than impermissible *post hoc* rationalizations. (*Id.* at 4.)

Since Blackmon's claim was filed after March 27, 2017, the Social Security Administration's new regulations ("Revised Regulations") for evaluation of medical opinion evidence apply to this claim. *See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.

Under the Revised Regulations, the Commissioner will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings, including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Rather, the Commissioner shall "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the factors set forth in the regulations: (1) supportability;[3] (2) consistency;[4] (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4)

---

[3] The Revised Regulations explain the "supportability" factor as follows: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

[4] The Revised Regulations explain the "consistency" factor as follows: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

specialization; and (5) other factors, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5), 416.920c(a), (c)(1)-(5). However, supportability and consistency are the most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The Revised Regulations also changed the articulation required by ALJs in their consideration of medical opinions. The new articulation requirements are as follows:

> (1) Source-level articulation. Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.
>
> (2) Most important factors. The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.
>
> (3) Equally persuasive medical opinions or prior administrative medical findings about the same issue. When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. §§ 404.1520c(b)(1)-(3), 416.920c(b)(1)-(3).

"Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'" *Ryan L.F. v. Comm'r of Soc. Sec.,* No. 6:18-cv-01958-BR, 2019 WL 6468560, at *4 (D. Ore. Dec. 2, 2019) (quoting 20 C.F.R. §§ 404.1520c(a) & (b)(1), 416.920c(a) & (b)(1)). A reviewing court "evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion." *Id.*

The ALJ found in pertinent part as follows regarding Blackmon's mental impairments:

> Regarding the consistency of the claimant's mental health allegations, she had a very limited treatment history since the alleged onset date, without evidence of current counseling or psychiatric hospitalization in the record, and she denied a history of taking psychotropic medications to Dr. Gruenfeld. Such absence of documentation of ongoing treatment is inconsistent, and it seriously undermines allegations of disabling, or even severe, limitations of function, lasting twelve months in duration, and despite treatment (20 CFR 404.1520(a)(4)(ii) and 404.1509). Additionally, the claimant reported mostly mild to moderate symptoms during her psychological consultative examination with Dr. Gruenfeld, without evidence of hallucinations, delusions, obsessions, compulsions, cognitive disorder, current suicidal/homicidal ideation, or other serious issues (Exhibit 4F). Thus, there are no indications in the medical record of limitations beyond the performance of light level work with the non-exertional restrictions listed above.

(Tr. 17-18.)

The ALJ then provided the following articulation regarding Dr. Gruenfeld's and Dr. Dietz's opinions:

> The undersigned finds the State agency psychological consultants' mental assessments somewhat persuasive, who assigned the claimant with moderate level mental limitations, such as the need for extra support with planning, scheduling, and changes in the workplace (Exhibit 3A; 4A; 7A; 8A). These opinions are generally consistent with the above residual functional capacity, as well as the claimant's medical records and very limited mental health treatment history, without evidence of psychiatric hospitalization or other serious issues since the alleged onset date. Additionally, the DDS consultants thoroughly

> reviewed the medical record and they are experts regarding Social Security Disability evaluation.
>
> The undersigned finds the psychological consultative examination of Dr. Gruenfeld somewhat persuasive (Exhibit 4F). Dr. Gruenfeld determined that the claimant's issues of focus and motivation would impact her ability to consistently carry out future job tasks, but task comprehension would not be an issue, she would work slower than others during a depressive episode, should be able to effectively work with others, and may have some issues handling workplace stresses and pressures. These opinions, although somewhat vague and not fully stated in vocational terms, are generally consistent with the medical record as a whole, the DDS psychological assessments, and the above residual functional capacity. Moreover, Dr. Gruenfeld is a mental health specialist who had the advantage of personally evaluating the claimant before completing this assessment.

(*Id.*)

The Court finds the ALJ erred in his evaluation of Dr. Dietz' and Dr. Gruenfeld's opinions. The ALJ specifically mentioned Dr. Dietz' opinion that Blackmon needed extra support with planning, scheduling, and changes in the workplace, but whether he found this limitation consistent or inconsistent with the record is unclear from the paragraph set forth above. Although the ALJ found the opinion only "somewhat persuasive," the ALJ then went on to explain how the opinion was "generally consistent" with the medical records and noted that Dr. Dietz was an expert in Social Security evaluations. Without further explanation, the ALJ also determined Dr. Dietz' opinion was "generally consistent" with the RFC, although the RFC omitted any limitation regarding extra support with planning, scheduling, and changes in the workplace. If he did indeed reject this limitation, the ALJ failed to explain why he rejected such a limitation even though the RFC conflicted with it. *See, e.g., Davidson v. Comm'r of Soc. Sec.*, No. 3:16CV2794, 2018 WL 1453472, at *2 (N.D. Ohio Mar. 23, 2018) ("'[W]here the opinion of a medical source contradicts his RFC finding, an ALJ must explain why he did not include its limitations in his determination of a claimant's RFC.'") (quoting *Moscorelli v. Colvin*, No. 1:15-cv-1509, 2016 WL 4486851, at *3 (N.D. Ohio Aug. 26, 2016)) (citing SSR 96-8p, 1996 WL 374184, at *7); *Cooper v. Comm'r of Soc. Sec.*, No. 2:18-cv-67, 2018 WL 6287996, at *5 (S.D. Ohio Dec. 3, 2018) ("[W]here, as

here, the ALJ assigns significant weight to a particular opinion and states it is consistent with the record, he must incorporate the opined limitations or provide an explanation for declining to do so.") (citations omitted), *report and recommendation adopted by* 2019 WL 95496 (S.D. Ohio Jan. 3, 2019). *See also* SSR 96–8p at *7, 1996 WL 374184 (SSA July 2, 1996) ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). The ALJ therefore failed to build an accurate and logical bridge from his findings to his conclusions. *Fleischer*, 774 F. Supp. 2d at 877 (N.D. Ohio 2011).

Likewise, in evaluating Dr. Gruenfeld's opinion, the ALJ specifically mentioned that Blackmon may have some issues handling workplace stresses and pressures. While the ALJ noted Dr. Gruenfeld's opinions were "somewhat vague and not stated in vocational terms," the ALJ went on to find them "generally consistent" with the medical record and Dr. Dietz' opinion. Without further explanation, the ALJ also determined Dr. Dietz' opinion was "generally consistent" with the RFC, although the RFC omitted any limitation regarding low stress work. The ALJ therefore failed to build an accurate and logical bridge from his findings to his conclusions. *Fleischer*, 774 F. Supp. 2d at 877 (N.D. Ohio 2011).

Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g., White*, 572 F.3d at 281; *Bowen*, 478 F.3d at 746 ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of his reasoning. Here, the ALJ failed to build an accurate and logical bridge from the evidence to his conclusions in his evaluation of the

15

opinions of Drs. Dietz and Gruenfeld. As a result, the ALJ's decision must be VACATED AND REMANDED for proper articulation regarding these opinions.

## VII. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is VACATED AND REMANDED FOR FURTHER CONSIDERATION CONSISTENT WITH THIS OPINION.

**IT IS SO ORDERED.**

Date: July 1, 2021                                <u>*s/ Jonathan Greenberg*</u>
                                                             Jonathan D. Greenberg
                                                             United States Magistrate Judge